UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PEGGY DUNDAS,

                Plaintiff,                      Case. No. 17-cv-10650

v.                                                  Honorable Thomas L. Ludington
                                                   Magistrate Judge Patricia T. Morris
LORI MARTIN, CLERK OF THE COURT
FOR THE COUNTY OF CLARE,
In her official and individual capacities,

                Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT

On March 1, 2017, Plaintiff Peggy Dundas filed a complaint against Defendant Lori Martin under 42 U.S.C. § 1983 in her official and individual capacities. Plaintiff alleges that Defendant terminated her without the legal authority to do so, in violation of her right to due process. Plaintiff also alleges she was terminated due to her political association in violation of her First Amendment rights, and due to her age in violation of the Michigan Elliot Larsen Civil Rights Act. Finally, Plaintiff alleges Defendant tortuously interfered with her at will employment contract with the County of Clare. After six months of discovery, Defendant moved for summary judgment on December 13, 2017.

**I.**

Plaintiff was previously employed as Chief Deputy Clerk of Clare County, Michigan. On November 8, 2016, a general election was held for the position of Clerk of the County of Clare, Michigan. The contenders for the election were incumbent Clerk Pamela Mayfield and Defendant Lori Martin. Plaintiff placed signs in her yard, participated in parades, town halls, and

various other political activities in support of incumbent Clerk Pamela Mayfield. These activities were known to Defendant Martin. Defendant Martin won the election, and took office January 1, 2017. On December 1, 2016, Defendant posted a job opening for the position of Deputy Clerk. Defendant notified Plaintiff on December 21, 2016 that her employment with Clare County would be terminated effective January 1, 2017. Defendant replaced Plaintiff with a younger employee.

## II.

### A.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). "The party opposing summary judgment cannot rest on its pleading or allegations, to prevail, they must present material evidence in support of their allegations." *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) (citing *Celotex Corp v. Catrett*, 477 U.S. 317 (1986)). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

**B.**

A prima facie case of first amendment retaliation requires a plaintiff to show 1) she was engaged in a protected activity, 2) subject to an adverse action sufficient to discourage a person of ordinary firmness from engaging in that activity, and 3) the protected conduct was a motivating factor in the adverse decision. *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332 (6th Cir. 2010). There is no dispute that Plaintiff was engaged in protected conduct when she supported the campaign of the incumbent clerk, nor is there a dispute that she was subject to an adverse decision. It is undisputed that Plaintiff's discharge was a patronage dismissal.[1] Resp. at 6, ECF No. 16; Mot. at 22, ECF No. 13.

As both parties acknowledge, patronage dismissals are generally unconstitutional because they violate a public employee's first amendment right to political belief and association. *Bauer v. Saginaw Cty.*, 641 F. App'x 510, 514 (6th Cir. 2016). However, patronage dismissals are not unconstitutional where the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved. *Summe v. Kenton Cty. Clerk's Office*, 604 F.3d 257 (6th Cir. 2010) (citing *Branti v. Finkel,* 445 U.S. 507 (1980)). To determine whether consideration of a public employee's political affiliation is lawful in making a personnel decision, a court must examine both the inherent duties of the position as well as the duties that the new holder[2] of that position will perform. *Id.* There are four categories of employees that are not subject to the prohibition on patronage dismissals, and who can be terminated based on political association. *Id.*; *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996). These include:

---

[1] A patronage dismissal is a termination for failure to support a particular party or candidate.
[2] The "new holder" of the position means the person hired to replace the employee who was terminated for their political affiliation.

> **Category One**: positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
> **Category Two**: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;
> **Category Three**: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors;
> **Category Four**: positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*McCloud*, 97 F.3d at 1557.

The parties do not dispute that category four is inapplicable. The sole issue is the applicability of categories one through three to Plaintiff's former position of Chief Deputy Clerk of Clare County. Defendant contends category one is applicable because MCL 50.63 and 50.64 expressly grant discretionary authority to the Chief Deputy Clerk. Mot. at 14. MCL 50.63 provides:

> Each county clerk shall appoint 1 or more deputies, to be approved by the circuit judge, 1 of whom shall be designated in the appointment as the successor of such clerk in case of vacancy from any cause, and may revoke such appointment at his pleasure, which appointment and revocation shall be in writing, under his hand, and filed in the office of the county treasurer, *and the deputy or deputies, may perform the duties of such clerks.*

(emphasis added). MCL 50.64 provides:

> That the county clerk and his sureties shall be responsible for the acts of his deputy or deputies, and in case of the death, resignation or removal of the clerk, or in any case of a vacancy by any other means in the said office of clerk, *the deputy or deputies shall severally perform all the duties of such clerk until such vacancy shall be filled*.

(emphasis added).

Defendant contends that the Chief Deputy Clerk position also falls within category two, which "encompasses positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated." Mot. at 15 (quoting *McCloud*, 97 F.3d at 1557). Defendant also contends the Chief Deputy Clerk position falls within category three. Defendant asserts that *Summe* is directly controlling, in which the Sixth Circuit found that categories two and three applied to permit the termination of a chief deputy county clerk who was defeated in her campaign for election to the position of county clerk. *Summe*, 604 F.3d 257 (6th Cir. 2010).

Plaintiff argues that none of the exceptions apply to the position of Chief Deputy Clerk because that position itself is not statutorily authorized by the statutes relied upon by Defendants, namely MCL 50.63 and 50.64. Resp. at 8. Rather, those statutes refer only to the position of "deputy." Thus, according to Plaintiff, her job title is of no legal consequence because "neither Clare County nor its county clerk is authorized to appoint a chief deputy clerk." *Id.* at 2. Plaintiff also argues that MCL 50.63 and 50.64 do not permit discretionary authority to be delegated to a deputy clerk. Plaintiff contends that, in contrast to MCL 50.63-64, MCL 45.41 *does* permit delegation of discretionary authority to deputy clerks, but only in counties with a population larger than 50,000.[3] Plaintiff also argues that, under MCL 50.131, the position of Chief Deputy Clerk is only permissible in states with a population of greater than 500,000. Thus, Plaintiff argues that "the only duties upon which Plaintiff was authorized to perform were those duties statutorily authorized to deputy clerks for counties with populations less than 50,000 as set forth in [MCL 50.63-64]." Resp. at 12. Finally, Plaintiff asserts that the Michigan Supreme Court has held that the duties and functions of county clerks are purely ministerial in nature. *Id.*

---

[3] The population of Clare County, MI is just over 30,000.
https://www.census.gov/quickfacts/fact/table/clarecountymichigan/PST045216

**III.**

The patronage dismissal was constitutionally permissible, as the position of Chief Deputy Clerk of Clare County falls within each of the first three *McCloud* categories.

**A.**

*McCloud* category one applies to:

> **Category One**: positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted

*McCloud*, 97 F.3d at 1557.

Neither Plaintiff nor Defendant devote attention to the question of whether the *County Clerk* was a category one employee, which is a key question. Perhaps both parties regarded this as a forgone conclusion. In any event, it cannot be reasonably disputed that the position of County Clerk falls within *McCloud* category one. Indeed, the position of County Clerk is an elected position established by Article VII § 4 of the Michigan Constitution, under which the County Clerk is elected to four year terms. *See Summe*, 604 F.3d at 267 (finding that the position of County Clerk was a *McCloud* category one position where it was "established by the Kentucky Constitution" and "it was an elected position with a term of four years.").

Under Michigan Law, the County Clerk's duties include, but are not limited to: serving as clerk of the circuit court (MCL 600.571(a)), collection and accounting of funds paid to the Clerk pursuant to court order (MCL 600.571(d)-(e)), issuing marriage licenses (MCL 551.101), issuing licenses to carry a concealed pistol (MCL 28.425(a)), voter registration (MCL 168.497c), and storage and maintenance of court records (MCL 600.571(f)). *See Summe*, 604 F.3d at 267 (finding that position of County Clerk was a *McCloud* category one position where the County Clerk was "charged with enforcing the law regarding issuance of licenses, the registration of

voters and the running of elections, and the storage and maintenance of legal and governmental records."); *Ray v. Davis,* 528 Fed. Appx. 453, 459 (6th Cir.2013) (holding that the position of county trustee was a category-one position because it was a "statutorily-created, elected position, vested with discretionary authority to carry out functions of political concern, including the collection, accounting, and distribution of state and county taxes."). Thus, the position of County Clerk is a *McCloud* category one position.

Plaintiff does offer two cases to support the proposition that "The Michigan Supreme Court has held that the duties and functions of County Clerks are purely ministerial in nature." Resp. at 12. Plaintiff offers no context for this assertion nor does she explain what this assertion is intended to establish. In any event, Plaintiff's citations are inapposite. First, Plaintiff cites *Sabbe*, an opinion from 1948, in which the court held that including the position of deputy circuit court clerk of Wayne county under the county civil service does not constitute an unconstitutional encroachment upon the judicial branch of government because the functions of such clerks are "purely ministerial and [] judicial functions cannot be performed by court clerks." *Sabbe v. Wayne Cty.*, 322 Mich. 501, 503 (1948).

First, Plaintiff's citation is entirely out of context. The Clerk's authority to perform judicial functions has no bearing on the question of whether the Clerk exercises discretionary authority so as to place her within a *Mcloud* exception. *See Peterson v. Dean*, 777 F.3d at 347 (6th Cir. 2015) (noting that the plaintiff cited to "decisions discussing the ministerial aspects of the commission and administration positions involv[ing] entirely inapposite contexts, with little or no bearing on the issues relevant to an *Elrod-Branti* exception analysis"). Furthermore, the fact that the County Clerk's duties vis-à-vis the court can be characterized as ministerial as opposed to judicial does not negate the fact that the County Clerk is charged with undertaking

the policymaking tasks set forth above. *See id.* ("the fact that some duties of the administrator may be classified as 'ministerial' does not preclude the determination that other designated duties, such as budgeting, reapportionment, and acting as an adviser to the commission are policymaking and inherently political tasks."). Plaintiff also cites to *Wilson*, a 1891 opinion in which the court held that the County Clerk could appoint a woman as deputy, noting that the County Clerk is a wholly ministerial position. *Wilson v. Genesee Circuit Judge*, 87 Mich. at 496 (1891). Again, that case is entirely inapposite, and has no effect on the analysis of the *McCloud* categories.

Having determined that the County Clerk is a category one position, it is notable that Michigan Law provides for Deputy Clerks to perform the duties of County Clerks. MCL 50.63 provides:

> Each county clerk shall appoint 1 or more deputies, to be approved by the circuit judge, 1 of whom shall be designated in the appointment as the successor of such clerk in case of vacancy from any cause, and may revoke such appointment at his pleasure, which appointment and revocation shall be in writing, under his hand, and filed in the office of the county treasurer, *and the deputy or deputies, may perform the duties of such clerks.*

(emphasis added). In addition to MCL 50.63 which provides that Deputy Clerks *may* perform the duties of County Clerks, MCL 50.64 provides that, in the event of death, resignation, or removal of the County Clerk, the Deputy Clerks *shall* perform the duties of the County Clerk:

> That the county clerk and his sureties shall be responsible for the acts of his deputy or deputies, and in case of the death, resignation or removal of the clerk, or in any case of a vacancy by any other means in the said office of clerk, *the deputy or deputies shall severally perform all the duties of such clerk until such vacancy shall be filled*.

(emphasis added). In sum, Michigan law clearly contemplates that Deputy Clerks can (and in some instances *must*) perform the duties of the County Clerk. Since County Clerks are *McCloud* category one positions, it follows that Deputy Clerks are as well.

Plaintiff notes that the position of Chief Deputy Clerk is not specifically contemplated by the above-mentioned statutes. Plaintiff asserts that the Chief Deputy Clerk position is only permitted in counties with a population greater than 500,000 under MCL 50.131, which provides: "In counties having a population of more than 500,000, the county clerk shall appoint a chief deputy circuit court clerk." The gravamen of Plaintiff's argument is at first difficult to ascertain, but is ultimately distilled down to the following: "the only duties upon which Plaintiff was authorized to perform were those duties statutorily authorized to deputy clerks for counties with populations less than 50,000 as set forth in the above-mentioned statutes . . . the title upon which Plaintiff was referred is of no legal consequence." Resp. at 12. In other words, Plaintiff appears to argue that the inherent duties of a "Chief Deputy Clerk" are irrelevant, as that position was not statutorily authorized in Clare County. According to Plaintiff, regardless of her job title, she should be considered a Deputy Clerk.

Assuming Plaintiff is correct, her argument is still non-responsive to the fact that Deputy Clerks are granted discretionary authority under MCL 50.63-64 by virtue of the fact that they are authorized (and in some instances *mandated*) to *perform the duties of County Clerks*. Plaintiff disagrees with this reading of MCL 50.63-64 but offers no explanation why, and advances no contrary interpretation of the text. Plaintiff simply contends "the Court should note that the statute legislature first provides discretionary authority to deputy clerks serving in counties with populations of greater than 50,000." Resp. at 11. In support of this assertion, Plaintiff quotes MCL 45.41, which provides:

> In all counties of this state having a population of more than 50,000 where it is provided by law that the county treasurer, county clerk and register of deeds shall receive salaries in lieu of fees, *each of said officers may appoint a deputy or deputies who may perform all the official acts which the officer making such appointment might legally do*, and who shall be paid therefor from the general

> fund of the county, such salaries as the board of supervisors of the county shall determine.

(emphasis added). Plaintiff is correct that this appears to grant discretionary authority to deputies by permitting them to do all of the official acts of County Clerks, and that this section is only applicable to counties with a population of more than 50,000. However, Plaintiff overlooks the fact that MCL 50.63 and 50.64 grant the same authority to Deputy Clerks, and contain no population criteria:

> Each county clerk shall appoint 1 or more deputies, to be approved by the circuit judge, 1 of whom shall be designated in the appointment as the successor of such clerk in case of vacancy from any cause, and may revoke such appointment at his pleasure, which appointment and revocation shall be in writing, under his hand, and filed in the office of the county treasurer, *and the deputy or deputies, may perform the duties of such clerks.*

MCL 50.63 (emphasis added).

> That the county clerk and his sureties shall be responsible for the acts of his deputy or deputies, and in case of the death, resignation or removal of the clerk, or in any case of a vacancy by any other means in the said office of clerk, *the deputy or deputies shall severally perform all the duties of such clerk until such vacancy shall be filled*.

MCL 50.64 (emphasis added).

Plaintiff offers no explanation as to why the MCL 45.41 should be considered a grant of discretionary authority to Deputy Clerks and MCL 50.63 and 50.64 should not. The only apparent difference is that MCL 45.41 grants Deputy Clerks authority to perform "the official acts" of County Clerks, whereas MCL 50.63 and 50.64 grant Deputy Clerks authority to perform "the duties" of County Clerks. As Plaintiff underscores, the Michigan Supreme Court instructs us to apply the "unambiguous plain language of the statute." Resp. at 9 (citing *Sun Valley Foods Co. v. Ward*, 460 Mich. 230, 236 (1999)). Based on the plain language of the statutes, there is no material difference between them. According to Oxford, "duty" is defined as 1) "a moral or legal

obligation; a responsibility," or alternatively 2) as "a task or action that one is required to perform as a part of one's job," as in "the queen's official duties." Thus, "duty" is synonymous with "official act." Plaintiff acknowledges that MCL 45.41 grants discretionary authority to Deputy Clerks. Thus, MCL 50.63 and 50.64 do as well. Accordingly, Plaintiff's former position falls within *McCloud* category one.

**B.**

Chief Deputy Clerk of Clare County also falls within *McCloud* category two:

> **Category Two**: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;

At the outset it is worth noting that MCL 50.63 does not specifically set out the responsibilities of deputy clerks. Thus, that provision could alternatively be read as *authorizing a delegation* of discretionary authority from the County Clerk to her deputies, as opposed to a statutory grant of authority. Indeed, dicta from *McCloud* supports the notion that category two was intended to cover such employees:

> Category two is constructed to recognize that it may be necessary to deny First Amendment protection not just to positions at the very top of any state administrative hierarchy, but in some cases to those occupying levels a bit farther down the hierarchy. Category two also exists to capture those who would otherwise be category one policymakers, except that the federal government, state, county, or municipality has chosen for whatever reason not to set out the responsibilities of such a position in a statute, ordinance, or regulation.

*McCloud*, 97 F.3d at 1557, n. 31.

Plaintiff again distinguishes between MCL 45.41 and MCL 50.63, arguing that only the former authorizes County Clerks to delegate discretionary authority to deputies. As Plaintiff notes, MCL 45.41 only applies to counties with populations over 50,000 and Clare County has

- 11 -

only 30,000. However, for the same reasons discussed above, there is no meaningful distinction between the discretionary authority provided in MCL 50.63 and 45.41, nor does Plaintiff attempt to distinguish them.

Plaintiff also focuses on the fact that the position of *Chief* Deputy Clerk is not recognized by Michigan statutes except in counties with greater than 500,000 people. Resp. at 12 (citing MCL 50.131). Again, this argument is a non-starter. First, Plaintiff's argument is predicated on the logically suspect notion that a *Chief* Deputy Clerk (which is not recognized by applicable statute) does not fall under the category of Deputy Clerk (which is explicitly recognized by applicable statute). Secondly, even if Plaintiff is correct, the second clause of *McCloud* category two expressly contemplates that positions not explicitly recognized in law may nonetheless fall under category two:

> **Category Two**: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; *or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions*;

*McCloud*, 97 F.3d at 1557. Thirdly, the *Summe* court recognized that the plaintiff's position of Chief Deputy Clerk was "an ad hoc position . . . that exists at the whim of the County Clerk who defines the Chief Deputy's job duties." *Summe*, 604 F.3d at 268. Nevertheless, the Court found that Chief Deputy Clerk was a category two position, as the County Clerk had delegated discretionary authority to her. *Id.* at 266. Thus, as *McCloud* and *Summe* both indicate, the position need not be identified by statute nor have a specifically defined role to fall under category two. Rather, the position must be one to which discretionary authority has been delegated, or which is inherent to the position by virtue of the jurisdiction's pattern or practice.

*Summe* further instructs that courts must also examine "the duties that the new holder of the position will perform." *Id.* at 265.

Here, Plaintiff had discretionary authority over a variety of areas. She ensured that work flow ran smoothly, granted time off, monitored breaks, trained new employees, checked their work, and ensured that employees stayed on task. Dundas Dep. at 31:9–13; 39:17–41:3; 44:14–45:6; 82:22–83:12. She also proposed schedule changes for the court clerks, as well as reapportionments to their work loads, which were implemented by the County Clerk. 37:24–38:9. Plaintiff was the second in command behind the County Clerk and reported to her. *Id.* at 35:14–15. Similarly, in *Summe* the court found the Chief Deputy Clerk was a *McCloud* category two position where she reported directly to the clerk, "instituted a cross-training program, reassigned personnel, promoted and demoted personnel, changed starting times, lunch breaks and vacations, subject to [the Clerk's] final approval." *Summe*, 604 F.3d at 266.

Furthermore, we must also consider "the duties that the new holder of the position will perform" under the new regime. *Id.* at 265. When asked why she terminated Plaintiff, Defendant Martin testified: "I didn't trust her . . . I didn't want her to be a policy mak[ing] partner with me in the office. I didn't believe I could confide in her." Martin Dep. at 11:22–12:4. This strongly suggests that the duties of the Chief Deputy Clerk under the new regime would include policy making authority. In sum, the position falls within *McCloud* category two.

### C.

Chief Deputy Clerk of Clare County also falls within *McCloud* category three:

**Category Three**: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors;

*Mcloud*, 97 F.3d at 1557.

Plaintiff responded in the affirmative when asked if she spent time "consulting with and advising Pam Mayfield of at least [her] thoughts on various subjects for the operation of the office." Dundas Dep. at 113:18–22. Specifically, Plaintiff sat in on interviews and the Clerk asked her opinion on hiring candidates. *Id.* at 36:21–25. When asked what other areas she advised the Clerk on, Plaintiff responded:

> she respected my opinion when it c[a]me to more specifically the courts because that was where I had most of my time in and most of my experience in . . . We talked, I know that we talked about more specifically with the court clerks about how we could rotate schedules to try to make it more fairly spread out as to whose duties, when they were going to be in court and those kind of things, and she listened to that and she agreed to implement that.

*Id.* at 37:24–38:9.

Furthermore, Defendant's testimony reflects that she intended the role of Chief Deputy Clerk under her regime to be that of a policy making partner and a confidant. "I didn't trust her . . . I didn't want her to be a policy mak[ing] partner with me in the office. I didn't believe I could confide in her." Martin Dep. at 11:22–12:4. In sum, the position of Chief Deputy Clerk of Clare County falls under *McCloud* category three.

## IV.

Plaintiff also alleges she was terminated due to her age. A prima facie case of age discrimination under the Michigan Elliot-Larsen Civil Rights Act may be established using direct or indirect evidence. *Gibbs v. Voith Indus. Servs., Inc.*, 60 F. Supp. 3d 780, 790 (E.D. Mich. 2014) (interpreting Michigan law). Direct evidence is the type of evidence that, if believed, requires the conclusion that the discrimination was at least a motivating factor in the adverse decision, without reliance on inference or presumption. *Id.* If the plaintiff produces direct

evidence, the burden shifts to the Defendant to show that it would have still taken the disputed action had it not been motivated by discrimination. *Id.* at 791.

If the plaintiff relies on indirect evidence, the *McDonell Douglas* burden shifting framework applies. *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). Under that framework, to establish a prima facie case, a plaintiff must show: 1) she belonged to a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *Id*. Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. *Id.* Finally, the burden shifts back to plaintiff to show that the proffered reason was a pretext for discriminatory conduct. *Id.*

Defendant contends that Plaintiff has not presented direct or indirect evidence of age discrimination so as to establish a prima facie case. Mot. at 22. Defendant also argues that they had a legitimate, non-discriminatory reason for the dismissal, namely a lawful patronage dismissal. Plaintiff argues that replacing her with a younger individual constitutes indirect evidence sufficient to establish a prima facie case. Resp. at 20. Plaintiff further argues that the patronage dismissal in this case was unlawful, and therefore cannot serve as a "legitimate" reason for the termination. *Id.* at 21–22.

Assuming that Plaintiff can establish a prima facie case of age discrimination based on the fact that she was replaced by a younger employee, her claim nevertheless fails because Defendant has established a legitimate, non-discriminatory reason for the termination, namely a lawful patronage dismissal. Plaintiff cannot argue that this reason is pretextual and that the termination was actually motivated by her age. Indeed, the first heading of Plaintiff's argument

section in her response brief reads: "Plaintiff's Discharge Was A Patronage Dismissal." Resp. at 6. Thus, Plaintiff does not attempt to argue pretext. Rather, Plaintiff contends that Defendant must offer a "legitimate" reason for the termination, other than her age, and that the patronage dismissal in this case was not "legitimate" because it doesn't fall within any of the *McCloud* exceptions. As discussed above, Plaintiff is incorrect. The patronage dismissal in this case was constitutional, and is therefore a legitimate reason for the termination. Thus, Plaintiff's age discrimination claim fails.

## V.

Plaintiff's due process claim (count I), and tortious interference claim (count III) are based on her allegation that Defendant fired her "without legal authority," because she did so before taking office. Plaintiff alleges under count I: "the Clerk of the Court is the only individual that can terminate Plaintiff's employment and Defendant Martin was not the Clerk of the Court at the time of Plaintiff's termination." Compl. at ¶ 44. Under count III, Plaintiff alleges: "Defendant Martin had no right or authority under statute to effectuate termination of the Plaintiff before she assumed the role of Clerk . . ." Compl. at ¶ 67.

These allegations are factually incorrect, as exhibit 1 to Plaintiff's complaint shows. ECF No. 1-1. Plaintiff was not terminated on December 21, 2016, the day Defendant Martin sent her the termination letter. Rather, the December 21 termination letter simply notified Plaintiff that she would be terminated effective January 1, 2017, the day Defendant took office. Plaintiff does not dispute that she was paid through the end of the year. Plaintiff does not explain how she was

section in her response brief reads: "Plaintiff's Discharge Was A Patronage Dismissal." Resp. at 6. Thus, Plaintiff does not attempt to argue pretext. Rather, Plaintiff contends that Defendant must offer a "legitimate" reason for the termination, other than her age, and that the patronage dismissal in this case was not "legitimate" because it doesn't fall within any of the *McCloud* exceptions. As discussed above, Plaintiff is incorrect. The patronage dismissal in this case was constitutional, and is therefore a legitimate reason for the termination. Thus, Plaintiff's age discrimination claim fails.

## V.

Plaintiff's due process claim (count I), and tortious interference claim (count III) are based on her allegation that Defendant fired her "without legal authority," because she did so before taking office. Plaintiff alleges under count I: "the Clerk of the Court is the only individual that can terminate Plaintiff's employment and Defendant Martin was not the Clerk of the Court at the time of Plaintiff's termination." Compl. at ¶ 44. Under count III, Plaintiff alleges: "Defendant Martin had no right or authority under statute to effectuate termination of the Plaintiff before she assumed the role of Clerk . . ." Compl. at ¶ 67.

These allegations are factually incorrect, as exhibit 1 to Plaintiff's complaint shows. ECF No. 1-1. Plaintiff was not terminated on December 21, 2016, the day Defendant Martin sent her the termination letter. Rather, the December 21 termination letter simply notified Plaintiff that she would be terminated effective January 1, 2017, the day Defendant took office. Plaintiff does not dispute that she was paid through the end of the year. Plaintiff does not explain how she was

deprived of due process or tortuously interfered with by receiving advanced notice of her termination. Accordingly, summary judgment will be granted for Defendant on counts I and III.[4]

**VI.**

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment, ECF No. 13, is **GRANTED.**

It is further **ORDERED** that the complaint, ECF No. 1, is **DISMISSED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: March 8, 2018

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 8, 2018.

s/Kelly Winslow  
KELLY WINSLOW, Case Manager

---

[4] The parties also litigated the question of whether Plaintiff was an at-will or just-cause employee, and whether she therefore had a property interest in continued employment. The Court will not opine on that question, but will hold Plaintiff to the original averment in her complaint, namely that she was an at-will employee. *See* Compl. at ¶ 11, 69.